## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**THOMAS ALBERS, LEE URANGA,**
**and BARBARA LYONS**

    **Plaintiffs,**

v.                                                                             No. 2:24-cv-00795-GJF-GBW

**NEW MEXICO STATE UNIVERSITY**
**BOARD OF REGENTS**

    **Defendant.**

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Thomas Albers, PhD ("Dr. Albers"), Lee Uranga, PhD ("Dr. Uranga"), and Barbara Lyons, PhD ("Dr. Lyons") (collectively, "Plaintiffs"), through undersigned counsel, complain as follows against the New Mexico State University Board of Regents ("NMSU" or "Defendant").

## PARTIES

1. Plaintiff Thomas Albers resides in Bernalillo County, New Mexico. He holds a PhD in chemistry.

2. Plaintiff Lee Uranga resides in Dona Aña County, New Mexico. He holds a PhD in chemistry.

3. Plaintiff Barbara Lyons resides in Dona Aña County, New Mexico. She holds a PhD in chemistry.

4. Defendant New Mexico State University Board of Regents is the governing entity for New Mexico State University ("NMSU"), a public university and subsidiary of the State of New Mexico.

## JURISDICTION

5. This Court has jurisdiction because this case raises a federal question.

6. Venue is proper as the acts that give rise to this action occurred in Dona Aña County, New Mexico.

## ALLEGATIONS

7. Plaintiffs are current and former employees in the Department. Plaintiffs have something else in common as well: they have all been targets of discriminatory, abusive conduct by Shelley Lusetti ("Lusetti"), the head of NMSU's Department of Chemistry and Biochemistry (the "Department").

### Lusetti's Mistreatment of Thomas Albers

8. Dr. Albers joined the Department in August of 2023, as a scientific instrumentation manager. He was responsible for maintaining the Department's complex scientific equipment, such as the nuclear magnetic resonance spectrometer. He was fully qualified to perform his job. Lusetti was his supervisor.

9. Throughout his time in the Department, Dr. Albers was harassed by Lusetti for what she described as his "disrespectful" attitude. The crux of Lusetti's complaint was that Dr. Albers was unable to maintain eye contact with her.

10. Dr. Albers is autistic, and as a result has difficulty maintaining eye contact with people.

11. In October of 2023, Dr. Albers alerted Lusetti to unsafe conditions in several of the Department's laboratories. The laboratories were cluttered with junk, obsolete unused equipment, and leftover chemicals. Dr. Albers believed the conditions posed a safety hazard to staff, students, faculty, and anyone else who entered the laboratories. The deplorable conditions were eventually brought to the attention of the Environmental Health and Safety Department at NMSU, which agreed that they needed to be addressed.

12. Following the report, Lusetti berated Dr. Albers for his purported lack of respect. She specifically demanded that Dr. Albers "look [her] in the eye" when speaking to her. Lusetti implicitly acknowledged the fact that the laboratories were unsafe by having a faculty member and their graduate students clean the spaces in question.

13. Lusetti further punished Dr. Albers for his supposed lack of respect and concern about safety by denying routine procurement requests that were needed to keep the Department's scientific instruments operational.

14. On December 5, 2023, Lusetti issued a written reprimand to Dr. Albers based on his "defiant attitude," and tells him he must "improve on the communication between [them]."

15. Lusetti further ordered Dr. Albers to undergo communication training.

16. In late December, Dr. Albers submitted a Title VII complaint to NMSU's Office of Institutional Equity ("OIE") based on Lusetti's criticism of his communication skills.

17. On December 20, 2023, three senior faculty members in the Department (one of whom was Dr. Lyons), all full professors with a decade or more of service submitted a letter to Lusetti voicing their support for Dr. Albers. The letter emphasized that his job performance was satisfactory.

18. Lusetti's abuse of Dr. Albers escalated throughout January 2024. On January 31, she reiterated that he must undergo communication training.

19. On February 1, 2024, OIE enacted emergency accommodations barring Lusetti from having in-person meetings with Dr. Albers, after particularly severe harassment from Lusetti. OIE was aware at that point of a preliminary diagnosis of autism by his family physician and a report from a neuropsychiatric evaluation by a clinical psychologist was pending at that time.

20. On March 5, 2024, Dr. Albers was fired by Lusetti, a week after voicing concern to a departmental employee about a serious lapse of hers in superconducting magnet safety

21. Lusetti was aware that Dr. Albers had autism.

22. Dr. Albers' disability and his decision to complain about multiple safety issues in the laboratories both motivated Lusetti to harass Dr. Albers, subject him to a hostile workplace environment, and ultimately terminate his employment.

23. As a result of Lusetti's actions, Dr. Albers has suffered injuries including loss of income, emotional distress, and deprivation of rights afforded him under the United States Constitution.

**Lusetti's Mistreatment of Lee Uranga**

24. Dr. Uranga is a Hispanic American. He received his PhD from NMSU in 2012, and from 2016 until January of this year, he was employed as a faculty researcher in the Department.

25. Throughout his time at NMSU, Dr. Uranga was subjected to a hostile work environment by Lusetti.

26. Lusetti frequently voiced racist, anti-Hispanic views in Dr. Uranga's presence.

27. For example, Lusetti would opine that white students were better than Hispanic students. Lusetti had received her PhD and postdoctoral training at the University of Wisconsin and would often reminisce about how much she enjoyed working at a university with fewer Hispanics.

28. Lusetti would also chastise Dr. Uranga and others if she heard them speaking Spanish in her presence. She threatened to place a swear jar in the laboratory, and make people put money in it if they said something in Spanish. This threat was repeated many times in front of several lab members.

29. In December of 2022, Dr. Uranga decided to apply for an open teaching position in the Department.

30. Dr. Uranga was fully qualified for the teaching position, and the job would provide him with greater job security. As research faculty, his salary was paid using grant funds—if grants dried up, he would lose his job.

31. However, Dr. Lusetti dissuaded Dr. Uranga from applying for the job. She told him there was no reason to apply, as the Department had long-term funding for his research position.

32. It turned out, though, that Dr. Lusetti had lied. In April of 2023, Dr. Lusetti hired one of her white friends for the teaching position. And shortly after the job application period was closed, notified Dr. Uranga that the Department was running out of funding for his position.

33. Dr. Uranga's salary was lower than similarly ranked white faculty members for much of his employment, and his position included additional, non-faculty duties. His salary was only brought in line with other faculty members in Fall 2021.

34. The hostility Lusetti displayed towards Hispanic people and culture disgusted Dr. Uranga, as did the knowledge that he was being treated worse than his colleagues because of his race.

35. As 2023 progressed, the accumulated abuse from Lusetti caused Dr. Uranga to become severely depressed.

36. In August of 2023, Dr. Uranga took 12 weeks off work, as allowed by the Family Medical Leave Act ("FMLA") and received mental health treatment.

37. Near the end of 2023, Dr. Uranga's therapist and also his primary care physician recommended that he take an additional 12 weeks of FMLA leave, but Lusetti refused to approve it.

38. In January of 2024, Dr. Uranga determined that he could no longer cope with the hostile work environment created by Lusetti and submitted his resignation.

39. Dr. Uranga was subjected to a hostile work environment and constructively terminated by Lusetti because of his race.

40. As a result of Lusetti's actions, Dr. Uranga has suffered injuries including loss of income, emotional distress, and deprivation of rights afforded him under the United States Constitution.

### Lusetti's Mistreatment of Barbara Lyons

41. Dr. Lyons is a tenured, full professor in the Department, where she has worked for decades.

42. In April of 2023, Dr. Lyons made a complaint to Dean Enrico Pontelli about Lusetti's discriminatory treatment of women in the Department.

43. In the years leading up to her complaint to Dean Pontelli, Dr. Lyons had observed multiple female professors quit because of Lusetti's hostility towards other women in the Department.

44. ──. A female faculty job candidate of color ranked most qualified for the position by department faculty vote was passed over. Instead Lusetti offered the position to the less qualified white male candidate. The white male candidate and his wife are friends of Lusetti.

45. Female professors were also paid less. For example, at the time of Dr. Lyons' promotion to full professor in 2019, she was paid $7,000 less per academic year than the Department's lowest paid male full professor.

46. Dr. Lyons has also been the target of disparagement and verbal abuse by Lusetti for much of her employment.

47. The severity and frequentness of Lusetti's mistreatment increased following the complaint to Dean Pontelli. Lusetti also retaliated against Dr. Lyons by not informing her of research funds available to her and organizing the purchase of department instrumentation without Dr. Lyons' knowledge. Dr. Lyons for both the years of 2022 and 2023 was the head of the Department Instrumentation Committee.

48. In January of 2024, Lusetti removed Dr. Lyons from her committee assignments. The removal came a short time after Dr. Lyons signed the letter from Department faculty objecting to Lusetti's mistreatment of Dr. Albers.

49. Dr. Lyons' gender and her decision to complain about Lusetti's discriminatory actions both motivated Lusetti to harass Dr. Lyons, remove her from committees, and subject her to a hostile workplace.

50. As a result of Lusetti's actions, Dr. Lyons has suffered injuries including emotional distress and deprivation of rights afforded her under the United States Constitution.

Count I

**FIRST CAUSE OF ACTION**
**Violation of the Americans with Disabilities Act**
**By Thomas Albers**
**Against NMSU**

51. Dr. Albers incorporates by all paragraphs in this complaint as if fully set forth here.

52. Dr. Albers is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

53. Dr. Albers' disability did not limit his ability to perform the essential functions of his job, with or without reasonable accommodation.

54. NMSU is an employer within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12111(5).

55. NMSU was aware of Dr. Albers' disability.

56. NMSU's actions constitute discrimination against Dr. Albers on the basis of disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a).

57. Dr. Albers' disability was a substantial or motivating factor in NMSU's decision to subject Dr. Albers to a hostile work environment and terminate him.

58. As a direct and proximate result of NMSU's unlawful conduct, Dr. Albers has suffered and continues to suffer substantial losses in earnings and other employment benefits, as well as emotional distress, mental anguish, and other compensatory damages.

59. NMSU acted with evil intent or was reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

60. On June 7, 2024, the EEOC or authorized state agency issued a right to sue letter on Dr. Albers' discrimination claim.

**SECOND CAUSE OF ACTION**
**Violation of the New Mexico Human Rights Act**
**By Thomas Albers**
**Against NMSU**

61. Dr. Albers incorporates by all paragraphs in this complaint as if fully set forth here.

62. Dr. Albers is a member of a protected class, based on disability.

63. Dr. Albers was performing his job in a way consistent with NMSU's legitimate expectations.

64. NMSU discriminated against Dr. Albers by, among other things, subjecting him to a hostile work environment, harassing him, and firing him.

65. NMSU acted with a willful and wanton disregard for Dr. Albers' rights.

66. Dr. Albers' disability was a motivating factor in NMSU's mistreatment.

67. As a direct and proximate result of NMSU's unlawful conduct, Dr. Albers has suffered and continues to suffer substantial losses in earnings and other employment benefits, as well as emotional distress, mental anguish, and other compensatory damages.

68. NMSU acted with evil intent or was reckless or callously indifferent to Plaintiff's rights, such that punitive damages are warranted.

69. On June 7, 2024, the New Mexico Human Rights Bureau issued a right to sue letter on Dr. Albers' discrimination claim.

**THIRD CAUSE OF ACTION**
**Violation of the New Mexico Whistleblower Protection Act**
**By Thomas Albers**
**Against NMSU**

70. Dr. Albers incorporates by all paragraphs in this complaint as if fully set forth here.

71. Dr. Albers is a "public employee" as that term is used in NMSA 1978, Section 10-16C-1.

72. NMSU is a "public employer" as that term is used in NMSA 1978, Section 10-16C-1.

73. NMSU engaged in retaliatory action against Dr. Albers because Dr. Albers "communicate[d] to the public employer or a third party information about an action or a failure to act that [he] believe[d] in good faith constitute[d] an unlawful or improper act." NMSA 1978, § 10-16C-3(a).

74. Dr. Albers suffered adverse employment by, among other things, being subjected to a hostile work environment and being fired.

75. Dr. Albers is entitled to reinstatement, double back pay with interest, attorney's fees, actual damages, and all other remedies permitted by law.

## FOURTH CAUSE OF ACTION
### Violation of Title VI of the Civil Rights Act of 1964, as amended
### By Lee Uranga
### Against NMSU

76. Dr. Uranga incorporates by all paragraphs in this complaint as if fully set forth here.

77. Dr. Uranga is a member of a protected class, based on race.

78. Dr. Uranga was performing his job in a way consistent with NMSU's legitimate expectations.

79. NMSU discriminated against Dr. Uranga by, among other things, subjecting him to a hostile work environment, harassing him, and constructively terminating him.

80. NMSU acted with a willful and wanton disregard for Dr. Uranga's rights.

81. Dr. Uranga's race was a motivating factor in NMSU's mistreatment.

82. As a direct and proximate result of NMSU's unlawful conduct, Dr. Uranga has suffered and continues to suffer substantial losses in earnings and other employment benefits, as well as emotional distress, mental anguish, and other compensatory damages.

83. NMSU acted with evil intent or was reckless or callously indifferent to Dr. Uranga's rights, such that punitive damages are warranted.

84. On June 7, 2024, the EEOC or authorized state agency issued a right to sue letter on Dr. Uranga's discrimination claim.

## FIFTH CAUSE OF ACTION
### Violation of the New Mexico Human Rights Act
### By Lee Uranga
### Against NMSU

85. Dr. Uranga incorporates by all paragraphs in this complaint as if fully set forth here.

86. Dr. Uranga is a member of a protected class, based on race.

87. Dr. Uranga was performing his job in a way consistent with NMSU's legitimate expectations.

88. NMSU discriminated against Dr. Uranga by, among other things, subjecting him to a hostile work environment, harassing him, and constructively terminating him.

89. NMSU acted with a willful and wanton disregard for Dr. Uranga's rights.

90. Dr. Uranga's race was a motivating factor in NMSU's mistreatment.

91. As a direct and proximate result of NMSU's unlawful conduct, Dr. Uranga has suffered and continues to suffer substantial losses in earnings and other employment benefits, as well as emotional distress, mental anguish, and other compensatory damages.

92. NMSU acted with evil intent or was reckless or callously indifferent to Plaintiff's rights, such that punitive damages are warranted.

93. On June 7, 2024, the New Mexico Human Rights Bureau issued a right to sue letter on Dr. Uranga's discrimination claim.

**SIXTH CAUSE OF ACTION**
**Violation of the New Mexico Whistleblower Protection Act**
**By Barbara Lyons**
**Against NMSU**

94. Dr. Lyons incorporates by all paragraphs in this complaint as if fully set forth here.

95. Dr. Lyons is a "public employee" as that term is used in NMSA 1978, Section 10-16C-1.

96. NMSU is a is a "public employer" as that term is used in NMSA 1978, Section 10-16C-1.

97. NMSU engaged in retaliatory action against Dr. Lyons because Dr. Lyons "communicate[d] to the public employer or a third party information about an action or a failure to act that [he] believe[d] in good faith constitute[d] an unlawful or improper act." NMSA 1978, § 10-16C-3(a).

98. NMSU also engaged in retaliatory action against Dr. Lyons because Dr. Lyons "object[ed] to or refuse[d] to participate in an activity, policy or practice that constitutes an unlawful or improper act." NMSA 1978, § 10-16C-3(c).

99. Dr. Lyons suffered adverse employment by, among other things, being subjected to a hostile work environment and being removed from committee assignments.

100. Dr. Lyons is entitled to attorney's fees, actual damages, and all other remedies permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. Require Defendant to pay actual damages;
2. Require Defendant to pay punitive damages;
3. Require Defendant to pay interest, reasonable attorney's fees, expenses, and costs of suit;
4. Back pay and reinstatement;
5. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

**WALDO GUBERNICK**
**LAW ADVOCATES LLP**

By: _____
Benjamin Gubernick
WALDO GUBERNICK
LAW ADVOCATES LLP
Benjamin Gubernick (SBN 321883)
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
717 Texas Ave. Suite 1200
Houston, TX 77007

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was served on all counsel of record via the Court's electronic filing system, in compliance with the Federal Rules of Civil Procedure.

*/s/ Benjamin Gubernick*
Benjamin Gubernick