UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

THOMAS ALBERS, LEE URANGA,
and BARBARA LYONS,

    Plaintiffs,

v.                                              Civ. No. 24-795 GJF/GBW

NEW MEXICO STATE UNIVERSITY
BOARD OF REGENTS,

    Defendant.

**MEMORANDUM OPINION AND ORDER ON
DEFENDANT'S MOTION TO BIFURCATE CASES FOR TRIAL**

THIS MATTER is before the Court on Defendant New Mexico State University Board of Regents' Motion to Bifurcate Cases for Trial ("Motion"). The Motion is fully briefed. *See* ECFs 24, 27, 28. Having thoroughly considered the filings, the record evidence, and the relevant law, the Court concludes that the Motion is premature. For the reasons explained below, the Motion is **DENIED WITHOUT PREJUDICE**.

**I.    BACKGROUND[1]**

This is an employment discrimination case. Doctors Thomas Albers, Lee Uranga, and Barbara Lyons ("Plaintiffs") are or were employed in the New Mexico State University ("NMSU") Department of Chemistry and Biochemistry ("the Department"). ECF 14 at 2 ¶ 7. All three hold a PhD in chemistry. *Id.* at 1 ¶¶ 1–3. Dr. Albers, who has autism [*id.* at 2 ¶ 10], was employed as a scientific instrumentation manager [*id.* at 2 ¶ 8]. Dr. Uranga, who is Hispanic, was employed as a faculty researcher. *Id.* at 4 ¶ 24. Dr. Lyons, a woman, is employed as a tenured professor. *See id.*

---

[1] The facts that follow come from NMSU's Notice of Removal, with Plaintiffs' state court complaint attached [ECF 1]; and Plaintiffs' First Amended Complaint ("FAC") [ECF 14].

1

at 5 ¶ 41. All three allege that they have "been targets of discriminatory, abusive conduct by" Dr. Shelly Lusetti, the head of the Department. *Id.* at 2 ¶ 7.

The Department hired Dr. Albers in August 2023 to maintain scientific equipment. *Id.* at 2 ¶ 8. Dr. Albers struggles to maintain eye contact due to autism.[2] *Id.* at 2 ¶ 10. According to the FAC, Dr. Albers's struggle to maintain eye contact angered Dr. Lusetti, who routinely criticized his "disrespectful" attitude. *Id.* at 2 ¶ 9. The FAC alleges that, in October 2023, Dr. Albers complained to Dr. Lusetti of unsafe laboratory conditions, prompting Dr. Lusetti to berate Dr. Albers and demand that he "look [her] in the eye." *Id.* at 2 ¶¶ 11–12. The FAC states that, soon thereafter, Dr. Lusetti retaliated by denying Dr. Albers's routine procurement requests for materials necessary for his job. *Id.* at 3 ¶ 13. The FAC accuses Dr. Lusetti of formally reprimanding Dr. Albers for his defiant attitude, requesting that the two "improve on the communication between [them]" and requiring Dr. Albers to participate in communication training. *Id.* at 3 ¶¶ 14–15. The FAC notes that, after receiving the formal reprimand, Dr. Albers submitted a Title VII employment discrimination complaint to the NMSU Office of Institutional Equity ("OIE"). *Id.* at 3 ¶ 16. Subsequently, three Department professors, including co-plaintiff Dr. Lyons, defended Dr. Albers's performance in a letter to Dr. Lusetti, but Dr. Lusetti maintained that Dr. Albers nonetheless must participate in communication training. *Id.* at 3 ¶¶ 17–18. According to the FAC, OIE barred Dr. Lusetti from in-person meetings with Dr. Albers and Dr. Lusetti thereafter fired Dr. Albers after he raised safety concerns related to a superconducting magnet. *Id.* at 3 ¶¶ 19–20.

The Department hired Dr. Uranga in 2016 as a faculty researcher. *Id.* at 4 ¶ 24. According to the FAC, Dr. Lusetti frequently shared anti-Hispanic views around Dr. Uranga. *Id.* at 4 ¶¶ 25–

---

[2] It is not immediately clear when Dr. Albers received an autism diagnosis. The FAC asserts that Dr. Albers is autistic [ECF 14 at 2 ¶ 10] and that Dr. Lusetti knew that Dr. Albers had autism [*id.* at 3 ¶ 21]. The FAC also asserts, however, that on February 1, 2024, Dr. Albers had a *preliminary* autism diagnosis from a family physician and a report from a neuropsychiatric evaluation was *pending*. *Id.* at 3 ¶ 19.

26. Specifically, the FAC accuses Dr. Lusetti of opining that white students are better than Hispanic students, of telling coworkers that she enjoyed working at the University of Wisconsin because there were fewer Hispanics, and of threatening to place a "swear jar" in the laboratory that employees would need to put money in every time they spoke Spanish. *Id.* at 4 ¶¶ 27–28. Additionally, the FAC alleges that Dr. Lusetti encouraged Dr. Uranga to withdraw his application for a teaching position, which would have provided him greater job security, only to hire a white applicant and inform Dr. Uranga that long-term funding for his current position may not exist. *Id.* at 4 ¶¶ 29–32. Moreover, the FAC contends that Dr. Uranga was paid less than similarly situated white employees. *Id.* at 4 ¶ 33. The FAC states that, as a result of Dr. Lusetti's conduct, Dr. Uranga became severely depressed and sought two twelve-week periods of leave, the second of which Dr. Lusetti denied. *Id.* at 5 ¶¶ 35–37. Dr. Uranga ultimately resigned from his position in January 2024, alleging constructive termination by Dr. Lusetti. *Id.* at 5 ¶¶ 38–39.

Dr. Lyons is a tenured professor in the Department. *Id.* at 5 ¶ 42. The FAC states that Dr. Lusetti disparaged, verbally abused, and underpaid Dr. Lyons and other female employees. *Id.* at 5–6 ¶¶ 43, 45, 46. According to the FAC, in April 2023, Dr. Lyons complained to Dean Enrico Pontelli that Dr. Lusetti discriminates against female employees. *Id.* at 5 ¶ 42. In response to Dr. Lyons's complaint to Dean Pontelli, Dr. Lusetti allegedly increased the frequency and severity of her mistreatment of Dr. Lyons and failed to inform Dr. Lyons of available research funds. *Id.* at 6 ¶ 47. Additionally, the FAC accuses Dr. Lusetti of removing Dr. Lyons from all committee assignments to punish her for signing the letter supporting Dr. Albers. *Id.* at 6 ¶ 48.

## II.   PROCEDURAL BACKGROUND

Plaintiffs initiated this case in state court against NMSU and Dr. Lusetti (together the "original defendants") with eleven causes of action. *See* ECF 1. Dr. Albers accused NMSU of

3

violating the Americans with Disabilities Act, the New Mexico Human Rights Act ("NMHRA"), and the New Mexico Whistleblower Protection Act ("NMWPA"), and charged Dr. Lusetti with violating the Fourteenth Amendment's Equal Protection Clause. *Id.* at 10–12 ¶¶ 52–84. Dr. Uranga alleged violations of Title VI[3] of the Civil Rights Act of 1964 and the NMHRA against NMSU, in addition to bringing an Equal Protection claim against Dr. Lusetti. *Id.* at 13–15 ¶¶ 85–109. Finally, Dr. Lyons alleged against NMSU violations of Title VII of the Civil Rights Act, the NMHRA, and the NMWPA, along with an Equal Protection claim against Dr. Lusetti. *Id.* at 15–17 ¶¶ 110–140.

Defendants removed this case to this Court and filed a Partial Motion to Dismiss. ECF 3. Defendants sought dismissal of Dr. Lyons's Title VII and NMHRA claims because they did not plausibly allege an adverse employment action. *Id.* at 3–6. Defendants also sought dismissal of Plaintiffs' Equal Protection claims against Dr. Lusetti in her individual capacity because of qualified immunity. *Id.* at 6–9. In lieu of responding, and with the consent of the defendants, Plaintiffs filed the FAC. *See* ECFs 12–14. The FAC contains the same factual allegations, [*compare* ECF 1 at 5–9 ¶¶ 8–51 *with* ECF 14 at 2–6 ¶¶ 7–50], but it removed Dr. Lusetti as an individual defendant and dropped the five challenged causes of action. [*see* ECF 14 at 1, 6–11 ¶¶ 51–100]. NMSU filed the present Motion on October 21, 2024. ECF 24.

## III. APPLICABLE LAW

Federal Rule of Civil Procedure 42(b) grants a court broad discretion to bifurcate a case for trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *U.S. ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010). "Bifurcation is not an abuse of discretion if such interests favor separation of issues and the issues are clearly

---

[3] Plaintiffs likely made a typo, and Dr. Uranga likely meant to allege a violation of Title VII, not Title VI. Dr. Lyons alleged a violation of Title VII for similar conduct [ECF 1 at 15], and Title VII "is the primary vehicle that Congress established to address employment discrimination." U.S. Dep't of Just., Title VI Legal Manual, § X – Employment Coverage, https://www.justice.gov/crt/fcs/T6Manual10#1. This presumed typo also exists in the FAC. ECF 14 at 9.

4

separable." *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993) (citation omitted). "Regardless of efficiency and separability, however, bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Id.* (citation omitted). The party seeking bifurcation bears the burden of proving that bifurcation is proper "in light of the general principle that a single trial tends to lessen the delay, expense, and inconvenience." *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010) (quotation omitted). Bifurcation should not be ordered routinely unless it is clearly necessary. *See Marshall v. Overhead Door Corp.*, 131 F.R.D. 94, 98 (E.D. Pa. 1990).

## IV. PARTIES' PRIMARY ARGUMENTS

Even at this early juncture, NMSU urges this Court to bifurcate this case into three separate trials,[4] one for each Plaintiff. ECF 24 at 5. NMSU argues that the Plaintiffs' cases "have nothing to do with one another" because each Plaintiff seeks relief under different laws for alleged discrimination based on different characteristics. *Id.* at 4. According to NMSU, a joint trial will prejudice NMSU by allowing the jury to hear unrelated allegations of discrimination. *Id.* Additionally, NMSU contends that trying all claims together does not serve judicial economy because each Plaintiff brings logically separable cases. *Id.*

For their part, Plaintiffs assert that the Motion is premature because any claims about juror confusion and prejudice are speculative while discovery remains open. ECF 27 at 2–3. Additionally, Plaintiffs insist that their trials should not be bifurcated because they all overlap with regards to Dr. Lusetti's conduct. *Id.* at 3.

In reply, NMSU emphasizes that there are no substantive links between Plaintiffs' cases, and a joint trial will deprive NMSU of a fair and impartial jury. ECF 28 at 2. Acknowledging that discovery has not closed, NMSU contends that a joint trial is sufficiently prejudicial to NMSU and

---

[4] NMSU concedes that the cases should remain consolidated for discovery purposes. ECF 24 at 3.

confusing to jurors that the Court can bifurcate the trials even before discovery closes. *Id.* at 3.

## V. ANALYSIS

Courts only bifurcate cases for trial when they have full information as to whether bifurcation will be convenient, avoid prejudice, and promote judicial economy. *See ConAgra, Inc.*, 624 F.3d at 1283 (quoting Fed. R. Civ. P. 42(b)); *Tarin v. RWI Const., Inc.*, 12-CV-145 CG/LAM, 2012 WL 12354227, at *3 (D.N.M. July 13, 2012). A court does not have full information until it knows for certain the factual and legal issues to be tried, which it cannot know until discovery closes and dispositive motions are filed and decided. *See Tarin*, 2012 WL 12345227, at *3; *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 446, 448–49 (S.D.N.Y. 1995); *Atain Specialty Ins. Co. v. 3G Homes, LLC*, No. 19-CV-267 RGE/HCA, 2020 WL 8225440, at *4 (S.D. Iowa June 8, 2020); *Combs v. Grand Victoria Casino & Resort*, No. 08-CV-414 RLY/JMS, 2008 WL 4452460, at *4 (S.D. Ind. Sept. 30, 2008); *see also Greenrod v. Mascaro Constr. Co., L.P.*, No. 24-CV-830, 2024 WL 4677469, at *2 (N.D. Ohio Nov. 5, 2024) (reasoning that a decision to bifurcate before discovery closes may be an impermissible advisory opinion).

Here, the Court lacks the full information that it needs to determine whether this case warrants bifurcation into three separate trials because it cannot know for certain the factual and legal issues to be tried when discovery remains open and dispositive motions may still be filed. *See Tarin*, 2012 WL 12354227, at *3. Discovery remains open until June 30, 2025 [ECF 22 at 2], and the parties have exchanged relatively limited information thus far [*see* ECFs 18, 23]. Additionally, both parties may file dispositive motions [ECF 15 at 2, 7], and they have until July 30, 2025, to do so [ECF 22 at 4]. Moreover, a potentially fruitful settlement conference, scheduled for May 29, 2025 [ECF 21], may take this case off the litigation highway well before trial for one or more Plaintiffs. Accordingly, in light of all of these variables, the Court cannot adequately assess

the Rule 42(b) factors and must deny the Motion as premature. After discovery is closed and dispositive motions have been decided, NMSU may refile its motion and the Court will revisit the bifurcation issue.

## VI.    CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Bifurcate Cases for Trial [ECF 24] is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*